IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLIFFORD JOSEPH KAROLSKI,<br><br>Plaintiff,<br><br>v.<br><br>BEAVER COUNTY, WARDEN WILLIAM SCHOUPPE, DEPUTY WARDEN CAROL STEELE-SMITH, CAPTAIN THOMAS TRKULJA, and GEORGE RUKERT,<br><br>Defendants. | Civil Action No. 2: 16-cv-0001<br><br>United States Magistrate Judge Cynthia Reed Eddy |

**MEMORANDUM OPINION[1]**

Presently before the Court is Defendants' Motion for Summary Judgment, with brief in support thereof. (ECF Nos. 46 and 47). Plaintiff has not responded to the motion, and the time for responding has now passed. Therefore, in the absence of any timely response by Plaintiff, the Court will deem the motion for summary judgment to be ripe for resolution. After reviewing the applicable record, the Court will grant summary judgment in favor of Defendants because there is no genuine issue of material fact regarding whether Plaintiff failed to exhaust his administrative remedies before filing this lawsuit.

**Background**

Plaintiff, Clifford Joseph Karolski, is a state inmate presently confined at SCI Camp Hill. This case was received by the Court for filing on January 4, 2016, with the filing of the complaint and a motion for leave to proceed in forma pauperis. (The Complaint, however,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), all parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. *See* ECF Nos. 5 and 30.

1

reflects that Plaintiff signed the Complaint on November 30, 2015). The case arises out of Karolski's confinement at the Beaver County Jail. In response to motions to dismiss, Plaintiff filed an Amended Complaint on April 15, 2016. (ECF No. 21). Plaintiff's Amended Complaint took issue with virtually every aspect of his incarceration. Defendants again filed motions to dismiss and the Court dismissed the claims against Counselor Jennifer Monza, Valerie Bearer, Trinity Services, and Trinity Services Group at the pleading stage. (ECF No. 25). As such, the only remaining defendants are Beaver County, Warden William Schouppe, Deputy Warden Carole Steele-Smith, Captain Thomas Trkulja, and George Rukert. The following four claims remain:

> 1. Allegations that his First Amendment rights were violated by refusing to allow him to receive Holy Communion and confession;
>
> 2. Allegations that correction officials used excessive force in strip searching him and in aiming a Taser at his anus and while he was in the RHU, was "forced to sleep on a steel bed with only boxers on, no mattress, or heat as punishment for 'misbehaving;'"
>
> 3. Allegations that he was exposed to cold temperatures, vermin, and overcrowding; and
>
> 4. Allegations that he was denied access to the courts through inadequate access to the law library.

Discovery has closed and Defendants now seek summary judgment based on Plaintiff's failure to exhaust his administrative remedies and because the record does not establish any civil rights violations.

### Standard of Review

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with " 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); see Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact ... is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record ...; or ... [by] showing that the materials cited do not establish the absence ... of a genuine dispute"). The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson,* 477 U.S. 242, 252 (1986).

**Discussion**

Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a

3

federal civil rights action concerning prison conditions. 42 U.S.C. § 1997e(a); *Booth v. Churner,* 206 F.3d 289, 291 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001). In order to fully exhaust remedies, a plaintiff must pursue a grievance through final administrative review. *Salley v. PA Dept. of Corr.,* 181 F. App'x 258, 264 (3d Cir. 2006). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 521 (2000).

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo,* 548 U.S. 81, 93 (2006). This means that "the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures." *Drippe v. Tobelinski,* 604 F.3d 778, 781 (3d Cir. 2010). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial[.]" *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir. 2004) (quoting *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000)). Consequently, an inmate who fails to substantially comply with a prison's grievance procedures with respect to a claim addressing prison conditions is barred from subsequently litigating it in federal court.

Failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proven by the defendant. *Small v. Camden County*, 728 F.3d 265, 268-69 (3d Cir. 2013) (citations omitted). The failure to exhaust administrative remedies must be proven with respect to each of the prisoner's claims. *Id*. at 269 (citation omitted).

To prove Plaintiff did not exhaust his administrative remedies with respect to his claims in this case, Defendants attached the Beaver County Jail Inmate Handbook, which details the grievance process (Exhibit 5); a form signed by Plaintiff acknowledging that he had received a

4

copy of the Inmate Handbook (Exhibit N); a copy of the grievances filed by Plaintiff during his incarceration at the Beaver County Jail (Exhibit F); and the Inmate Request Slips submitted by Plaintiff while incarcerated at the Beaver County Jail (Exhibit O).

Despite the Court's order instructing Plaintiff to respond to Defendants' motion for summary judgment (ECF Nos. 29 and 50), Plaintiff has submitted no evidence in this matter whatsoever. Therefore, there are no disputed material facts before the Court with respect to whether Plaintiff complied with the Beaver County Jail's grievance policy.

The Inmate Handbook explains the formal grievance policy as follows:

> The Housing Officer will make this form available and provide it when needed by you. Upon completion of the form including a signature and the date; the form is to be placed in the request box. The Captain, upon receiving the form, will log the grievance and/or appeal that was filed by you. After the form is logged it will be forwarded to the responsible staff member for a response and possible solution.
>
> After the Staff member; responds, signs and dates the form, it will be returned to the Captain, who will again return it to you. You will then decide if you will accept or deny the action, proposed by the Staff member and return the form to the Captain. If denying the proposed action, you must state why before returning the form. Either way you must again sign and date the form before submitting it.
>
> In the case of a denial, the Captain will submit the form to either the Shift Supervisor or the Deputy Warden, depending on the circumstances in which the grievance or appeal entails. After the form is responded to; signed and dated, it will again be submitted to the Captain to be returned to you. Again you will have the opportunity to respond; sign and date and return the form. If you still are not satisfied with the proposed action, again state your reason why when resubmitting the form.
>
> If the form is returned denied by you; the Shift Supervisor or the Deputy Warden; will then decide if this is a non-grievance issue. After all the steps have been taken, to come up a proposed plan of action; if the grievance is not valid, the Supervisor or Deputy will advise you of their decision; sign and date the form and return it to the Captain.
>
> Once the form is returned with the decision; and you are still not satisfied, forward a written statement, along with your completed signed and dated form, to the Warden within five (5) days. The Warden then from the date he receives

5

the form has five days to respond, the Warden's decision will be **final. Forms that are not legible, signed, dated and submitted within the five (5) day window will not be addressed. FIVE (5) DAYS ARE CONSIDERED AS FIVE (5) WORKING DAYS.**

Appendix, Exh. 5 Inmate Handbook (punctuation and emphasis in original) (ECF No. 49-5).

The summary judgment record reflects that Plaintiff filed no less than twenty eight separate grievances (Exhibit F) and ninety request slips (Exhibit N) while he was incarcerated at the Beaver County Jail. As stated *supra*, the failure to exhaust administrative remedies must be proven with respect to each of Plaintiff's claims. Accordingly, notwithstanding Plaintiff's failure to respond, the Court will address each of Plaintiff's claims.

    A.    <u>Communion and Confession</u>. Plaintiff alleges that Defendants refused to allow him to receive Holy Communion and confession. However, a review of the grievance file reflects that Plaintiff never filed a grievance concerning either of these issues. He filed a request slip on October 28, 2015, asking if he "can be allowed to receive my necessary religious practice of receiving the 'Eucharist' from Deacon Joe on Mondays or Wednesdays even if it is in the Sally Port shackled?" Exh. O (ECF No. 49-15 at 47). However, he did not grieve the issue.

    B.    <u>Excessive Force</u>. Plaintiff alleges that correction officials used excessive force in strip searching him and aiming a Taser at his anus and that while he was in the RHU, he was forced to sleep on a steel bed with only boxers on, no mattress, or heat as punishment for misbehaving. The grievance file reflects that on December 3, 2015, Plaintiff filed a grievance form alleging that a correction officer "became enraged at the scene of flooding" in his cell and "threw personal hygiene products and mattress into water while cussing." (Grievance 03054). On December 10, 2015, Plaintiff filed a grievance form stating that Sgt. Heaton threw all his hygiene products away. (Grievance 03085). Neither grievance says anything about being strip

searched, a Taser being pointed at his anus, or being forced to sleep on a steel bed with only boxers, no mattress, or heat as punishment for misbehaving.

      C.    <u>Conditions of Confinement</u>. Plaintiff alleges that he was exposed to cold temperatures, vermin, and overcrowding. None of Plaintiff's grievances in the summary judgment record concern overcrowding and none of the grievances mention "vermin" or anything commonly associated with that word.

      The Complaint alleges that in February of 2014 while in D Pod, there was no heat for five days and that in February of 2015 while in B Pod, the heat was out for several days. Amended Complaint, ¶ IV(C)(3-4). The grievance file reflects that on November 16, 2015, Plaintiff did file a grievance stating that "[i]t is freezing in here and all last night the heat never came on." (Grievance 03010). However, this grievance concerned the temperature in the RHU as Plaintiff was housed in RHU 112 at the time. The grievances in the summary judgment record do not concern the temperature in D pod in February of 2014 or B Pod in February of 2015.

      4.    <u>Access to the Courts</u>. Plaintiff alleges that he was denied access to the courts through inadequate access to the law library. The summary judgment record does not reflect that Plaintiff filed a grievance about law library access <u>prior</u> to initiating this lawsuit.[2] Plaintiff did submit a grievance on January 9, 2016, stating that he needed access to the law library (Grievance No. 031106) and then again on January 29, 2016, he filed a grievance stating that the law library was not accessible during his free or out of cell time. (Grievance No. 030205).

---

[2]    Plaintiff first brought an access to the courts claim in his original complaint: "inadequate or refusal access to law library, unable to access and no instructions on how to use." Complaint, ¶ 13 at 5. He again brought this claim in his amended complaint.

Both of these grievances were filed <u>after</u> this case was initiated. Administrative exhaustion must be completed prior to the filing of an action. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).

Having not pursued a grievance while incarcerated at the Beaver County Jail, Plaintiff has failed to exhaust his administrative remedies as required by the PLRA and is now barred from bringing them in court. Consequently, summary judgment in favor of Defendants is proper.[3]

**Conclusion**

The record currently before the Court demonstrates that Plaintiff did not participate in either the informal or formal grievance procedure while housed at the Beaver County Jail. Accordingly, the Court will grant summary judgment in favor of Defendants because there is no genuine issue of material fact with respect to Plaintiff's failure to exhaust his administrative remedies as required by the PLRA.

A separate order follows.

Dated: June 22, 2017

BY THE COURT:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

---

[3] Having determined that summary judgment on Plaintiff's claims is proper because he failed to exhaust his administrative remedies, the Court need not address the merits of Plaintiff's claims.

cc:      CLIFFORD JOSEPH KAROLSKI
           MQ 0691
           SCI Camp Hill
           P.O. Box 200
           Camp Hill, PA 17001
           (via U.S. First Class Mail)

           Marie Milie Jones
           Michael R. Lettrich
           JonesPassodelis PLLC
           (via ECF electronic notification)